**RECORD NO. 14-4649**

# IN THE
# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

ANTONIO TASTE,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT NORTH CAROLINA
AT GREENSBORO

**OPENING BRIEF OF APPELLANT
ANTONIO TASTE**

Steven A. Feldman
FELDMAN and FELDMAN
Attorneys at Law
626 Reckson Plaza
West Tower, Sixth Floor
Uniondale, New York 11556
(516) 522-2828
reversalzz@aol.com

*Counsel for Appellant*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

STATEMENT OF SUBJECT MATTER
      AND APPELLATE JURISDICTION . . . . . . . . . . . . . . 1

STATEMENT OF ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . 4

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . 8

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

POINT I:

> BY AUTHORIZING THE PROBATION
> DEPARTMENT TO CONDUCT "SUBSTANCE
> ABUSE TESTING AT ANY TIME" ON
> SUPERVISED RELEASE, WITHOUT ISSUING A
> SCHEDULE, OR EVEN SETTING A
> LIMITATION ON THE NUMBER OF TESTS PER
> YEAR, THE DISTRICT COURT IMPROPERLY
> DELEGATED THIS JUDICIAL FUNCTION . . . . . . . 9

POINT II:

> WHILE THIS COURT AND THE FIRST CIRCUIT
> HAVE RULED THAT THE RESIDUAL
> PROVISION OF THE ARMED CAREER
> CRIMINAL ACT COVERS LARCENY FROM
> THE PERSON, SUPREME COURT JUSTICE
> ANTONIN SCALIA, IN *DERBY V. UNITED
> STATES*, 131 S. CT. 2858, 180 L. ED. 2D 904
> (2011), IN A DISSENT FROM THE DENIAL OF
> CERTIORARI IN *UNITED STATES V. JARMON*,

596 F.3D 228 (2010), HAS ALREADY CRITICIZED THIS COURT'S REASONING, WRITING THAT IT " ... JUSTIFIED ITS APPARENT VIEW THAT OLIVER TWIST WAS A VIOLENT FELON BY NOTING THAT LARCENY 'REQUIRES THE OFFENDER TO MAKE PURPOSEFUL, AGGRESSIVE MOVES TO PART THE VICTIM FROM HIS OR HER PROPERTY, CREATING A . . . RISK OF VIOLENT CONFRONTATION' SIMILAR TO THE RISK OF VIOLENT CONFRONTATION DURING BURGLARIES" . . . . . . . . . . . . . . . . . . . . .  14

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

REQUEST FOR ORAL ARGUMENT . . . . . . . . . . . . . . .  23

CERTIFICATE OF COMPLIANCE WITH
       TYPEFACE AND LENGTH LIMITS
       PURSUANT TO FRAP 32(A)(7)(c) . . . . . . . . . . .  24

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . .  25

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Derby v. United States*, 131 S. Ct. 2858, 180 L. Ed. 2d
     904 (2011) . . . . . . . . . . . . . . . . . . . . . . . . 8, 18, 19, 20

*States v. Tucker*, 740 F.3d 1177 (8th Cir. 2014) . . . . . . . . . . 20

*Sykes v. United States*, 131 S. Ct. 2267, 180 L. Ed. 2d
     60 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 21

*United States v. Bonanno*, 146 F.3d 502 (7th Cir. 1998) . . . 11

*United States v. Cowan*, 696 F.3d 706 (8th Cir. 2012) . . . . . 21

*United States v. De Jesus*, 984 F.2d 21 (1st Cir. 1993) . . . . 16

*United States v. Hudson*, 673 F.3d 263 (4th Cir. 2012) . . . . 21

*United States v. James*, 550 U.S. 192, 127 S. Ct. 1586,
     167 L. Ed. 2d 532 (2007) . . . . . . . . . . . . . . . . . . . . . 21

*United States v. Jarmon*, 596 F.3d 228 (4th Cir.
     2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 8, 17, 18, 19

*United States v. Johnson*, 48 F.3d 806
     (4th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Jones*, 689 F.3d 696
     (7th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*United States v. Martin*, 753 F.3d 485 (4th Cir. 2014) . . . . . . 7

*United States v. Melendez-Santana*, 353 F.3d 93
     (1st Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Olano*, 507 U.S. 725, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993) . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Prater*, 766 F.3d 501 (6th Cir. 2014) . . . . . 20

*United States v. Rodriguez*, 659 F.3d 117 (1st Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 17, 18

*United States v. Seay*, 553 F.3d 732 (4th Cir. 2009) . . . . . . . 15

*United States v. Simmons*, 649 F.3d 237 (4th Cir. 2011) . . . . 4

*United States v. Stephens*, 424 F.3d 876 (9th Cir. 2005) . . . 13

*United States v. Tulloch*, 380 F.3d 8 (1st Cir. 2004) . . . . . . 11

## STATE CASES

*Commonwealth v. Davis*, 7 Mass App 9, 385 N.E.2d 278 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Commonwealth v. Glowacki*, 398 Mass. 507, 499 N.E.2d 290 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . 15

## FEDERAL STATUTES

18 U.S.C. § 922(g)(1) & 924(e) . . . . . . . . . . . . . . . . . . . . . . . 3

18 U.S.C. §§922(g)(1) & 924(e) . . . . . . . . . . . . . . . . . . . . . . 4

Armed Career Criminal Act (ACCA), 18 U.S.C. §924(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

18 U.S.C, § 924(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 7, 14

18 U.S.C. §924(e)(2)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . 15

18 U.S.C. § 924(e)(2)(B)(ii) . . . . . . . . . . . . . . . . . . 16, 17, 18

18 U.S.C. § 3231 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. §3583(d)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

18 U.S.C. § 3742(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 2255 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

## STATE STATUTES

N.C. Gen. Stat. § 15A-1340.17(c) and (d) . . . . . . . . . . . . . 5

Va. Code Ann. § 18.2-95(I) (Lexis 2009) . . . . . . . . . . . . . 19

Mass. Gen. Laws ch. 266, § 25(b) (2008) . . . . . . . . . . . 14, 15

U.S.S.G. § 4B1.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 17

## UNREPORTED CASES

*United States v. Dalton*, 442 Fed. Appx. 898, 900
(4th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Miller*, 341 Fed. Appx. 931,
932-33 (4th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . 12

iii

STATEMENT OF SUBJECT MATTER
AND APPELLATE JURISDICTION

1. The basis for subject matter jurisdiction in the District Court was 18 U.S.C. § 3231.

2. The basis for jurisdiction in the Court of Appeals is 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

3. The district court entered an amended judgment on August 12, 2014, and a notice of appeal was filed on August 19, 2014, making this appeal timely.

4. This appeal is from a final judgment that disposes of all claims with respect to Antonio Taste.

1

## STATEMENT OF ISSUES

1. By authorizing the Probation Department to conduct "substance abuse testing at any time" on supervised release, without issuing a schedule, or even setting a limitation on the number of tests per year, did the district court improperly delegate this judicial function?

2. While this court and the First Circuit have ruled that the residual provision of the Armed Career Criminal Act covers larceny from the person, where Supreme Court Justice Antonin Scalia, in *Derby v. United States*, 131 S. Ct. 2858, 180 L. Ed. 2d 904 (2011), in a dissent from the denial of certiorari in *United States v. Jarmon*, 596 F.3d 228 (2010), has already criticized this court's reasoning on the identical crime, should Appellant advance and exhaust this issue in order to file a petition for writ of certiorari?

## STATEMENT OF THE CASE

Appellant, Antonio Taste, appeals from a resentence, on July 29, 2014, in the United States District Court for the Middle District of North Carolina (Hon. William L. Osteen),following a plea to 18 U.S.C. § 922(g)(1) & 924(e), Possession of a firearm in commerce after a felony conviction, and a sentence of 180 months' imprisonment.

<u>STATEMENT OF FACTS</u>

<u>Appellant's §2255 Motion</u>

On October 3, 2007, Appellant was convicted of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). He was thereafter sentenced to 180 months of imprisonment as an Armed Career Criminal.

Appellant then filed a Motion to Vacate, Set Aside, or Correct his Sentence, pursuant to 28 U.S.C. § 2255. He argued his sentence was invalid in light of this Court's ruling in *United States v. Simmons*, 649 F.3d 237 (4th Cir. 2011), because his sentence as an Armed Career Criminal was based on state convictions that were not punishable by more than one year of imprisonment.

In its reply, the government conceded that, based on *Simmons*, that four breaking and entering convictions from North Carolina which were listed in the Indictment would no longer be convictions for "a violent felony or a serious drug offense, or both, committed on occasions different from one another" to support the Armed Career Criminal enhancement. *See* 18 U.S.C.

4

§ 924(e)(providing that an Armed Career Criminal 15-year mandatory minimum sentence applies if a person violates 18 U.S.C. § 922(g) as a felon in possession of a firearm and has three previous convictions for "a violent felony or a serious drug offense, or both, committed on occasions different from one another.").

The government argued, however, that one of the prior convictions listed in the Indictment supported the Armed Career Criminal enhancement, namely, a South Carolina conviction for strong-arm robbery. Yet the Government agreed that Appellant's requested relief should be granted pursuant to 28 U.S.C. § 2255, and that Appellant should be resentenced.

The Magistrate found that Appellant's state court judgment, for his March 9, 2007 North Carolina convictions for breaking and entering, were Class H felonies with a prior record level of II. Based on this, the maximum sentence he faced, under North Carolina law, as analyzed in *Simmons*, was less than 12 months. *See* N.C. Gen. Stat. § 15A-1340.17(c) and (d) (for offenses committed between Dec. 1, 1995 and Nov. 30, 2009). Thus, only

5

one of the predicate offenses listed in the Indictment still qualifies as an ACCA predicate.

The government, however, gave notice that it believed Appellant is still an Armed Career Criminal based on convictions from the State of Massachusetts which were not listed in the Indictment, but were included in the Presentence Report. Appellant, however, never had an opportunity to contest those convictions at the time of his original sentencing. The matter was thus set down for resentencing, where the district court assessed the impact of the Massachusetts convictions.

<u>Appellant is Resentenced</u>

At resentencing, held on July 23, 2014, defense counsel objected to the inclusion of larceny from the person as a qualifying predicate under the Armed Career Criminal Act ("ACCA")(JA 16, 17).

The district court disagreed. Citing *United States v. Rodriguez*, 659 F.3d 117, 119 (1st Cir. 2011), it called this a "straightforward question" and found it was a qualifying offense (JA 20).

The court also cited *United States v. Martin*, 753 F.3d 485, 490 (4th Cir. 2014)("In this circuit, however, we have continued, even after *Sykes*, to apply *Begay's* similar-in-kind requirement to residual-clause cases") (JA 20, 21).

The district court, however, then continued the resentence to July 29, 2014. At that time, it ruled that, because " ... larceny from the person has been held in the First Circuit to constitute a crime of violence ... [it] does constitute ... a crime of violence for purposes of 18 USC Section 924(e)" (JA 18).

The court then resentenced Appellant to 180 months' imprisonment, and ordered him to " ... submit to substance abuse testing *at anytime* as directed by the probation officer" (JA 24)(emphasis added).

7

## SUMMARY OF ARGUMENT

The sentence should be vacated and remanded because the district court committed plain error when it delegated the number of drug tests to the probation officer.

Whether Appellant's conviction in Massachusetts of larceny from the person should qualify as a predicate offense under the Armed Career Criminal Act ["ACCA"], while already decided by this Court, remains a hotly contested issue in the United States Supreme Court.

In a dissent from the denial of certiorari in *Derby v. United States*, 131 S. Ct. 2858, 180 L. Ed. 2d 904 (2011), Justice Antonin Scalia criticized this court's reasoning in *United States v. Jarmon*, 596 F.3d 228 (2010), which turned on the identical finding that larceny from the person is an ACCA qualifying offense. No doubt aggrieved that a simple pickpocketing could be deemed a violent predicate felony, he sardonically referred to the defendant in that case as "Oliver Twist," and said he would grant certiorari, and " ... ring down the curtain on the ACCA farce playing in federal courts throughout the Nation."

8

ARGUMENT

POINT I

BY AUTHORIZING THE PROBATION DEPARTMENT TO CONDUCT "SUBSTANCE ABUSE TESTING AT ANY TIME" ON SUPERVISED RELEASE, WITHOUT ISSUING A SCHEDULE, OR EVEN SETTING A LIMITATION ON THE NUMBER OF TESTS PER YEAR, THE DISTRICT COURT IMPROPERLY DELEGATED THIS JUDICIAL FUNCTION.

At resentence, Judge William L. Osteen, Jr., ordered, as a special condition of supervised release, that Appellant " ... submit to substance abuse testing at any time as directed by the probation officer" (JA 24). This constitutes an improper delegation of a judicial function from the district court to the probation department, and is, therefore, plain error.

Defense counsel did not object. The error is thus reviewed for plain error. *United States v. Dalton*, 442 Fed. Appx. 898, 900 (4th Cir. 2011)("We also conclude there was no plain error with respect to the special conditions imposed for Dalton's period of supervised release.").

To meet the plain error standard: (1) there must be an error; (2) the error must be plain; and (3) the error must affect

9

substantial rights. *United States v. Olano*, 507 U.S. 725, 732-34, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993). If the three elements of this standard are met, this court may still exercise its discretion to notice the error only if the error "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id*. at 736.

Here, the special condition of supervised release was an error, because the district court delegated wholesale authority to the probation officer to administer drug tests.

While probation officers serve under the discretion of the district court, and are authorized to manage aspects of sentences and to supervise probationers and persons on supervised release with respect to all conditions imposed by the court, *United States v. Johnson*, 48 F.3d 806, 808 (4th Cir. 1995), a court may not delegate a judicial function to a probation officer, because that violates Article III of the United States Constitution. *See id*. at 808-09.

The error was also plain. Numerous courts have ruled that the probation officer cannot determine the number of drug tests.

10

*See United States v. Bonanno*, 146 F.3d 502, 511 (7th Cir. 1998) (drug testing order, which required the defendants to submit to urinalysis "at random ... within the discretion of the probation officer" was beyond the parameters of the supervised release statute and gave the probation officer too much discretion in the management of the drug testing order); *United States v. Melendez-Santana*, 353 F.3d 93, 103 (1st Cir. 2003)(while courts need not become involved in details such as scheduling tests, Congress assigned the courts the responsibility of stating the maximum number of tests to be performed or to set a range; they may not vest probation officers with the discretion to order an unlimited number of drug tests); *United States v. Tulloch*, 380 F.3d 8, 10-11 (1st Cir. 2004)(giving probation officer discretion to order unlimited drug tests is an improper delegation; allowing the probation officer to determine the timing of tests is permissible administrative task).

By allowing the probation officer to determine the number of drug tests per year, the district court did not delegate a mere ministerial act. On the contrary, it afforded him the ultimate, and

11

unfettered, responsibility of imposing this aspect of the special condition of supervised release. *United States v. Miller*, 341 Fed. Appx. 931, 932-33 (4th Cir. 2009)("Determination of whether a court has improperly delegated the judicial authority of sentencing is based on distinguishing between the delegation to a probation officer of 'a ministerial act or support service' and the 'ultimate responsibility' of imposing sentence")(*quoting United States v. Bernardine*, 237 F.3d 1279, 1283 (11th Cir. 2001).

The error will affect Appellant's substantial rights because an overzealous probation officer can order drug testing every day, or even every few hours--a regimen which no defendant on supervised release can reasonably adhere. *Cf.* 18 U.S.C. § 3583(d)(2)(When imposing special conditions of supervised release, it is limited to those conditions that "involve[] no greater deprivation of liberty than is reasonably necessary."). This onerous burden seriously affects the fairness, integrity and public reputation of the judicial proceedings by creating a set of facts which guarantee a violation of supervised release, and a return to prison, without any credit for time served on release.

A finding of plain error cannot be avoided simply because, in seeking relief from a probation officer's onerous requirements, this drug testing can be modified at any time prior to the expiration or termination of the term of supervised release. That would impose an unreasonable burden on a lay defendant. It would ask him to correct a district court's error, instead of simply asking a judge to comply with the law *ab initio*. Reversal is thus warranted. *Cf. United States v. Stephens*, 424 F.3d 876,878 (9th Cir. 2005)(" ... the testing condition, as imposed here, was an improper delegation of the district court's duty to set the maximum number of non-treatment drug tests to which Stephens would be subjected during the course of his supervised release. Accordingly, we vacate the sentence and remand.").

13

POINT II

WHILE THIS COURT AND THE FIRST CIRCUIT HAVE RULED THAT THE RESIDUAL PROVISION OF THE ARMED CAREER CRIMINAL ACT COVERS LARCENY FROM THE PERSON, SUPREME COURT JUSTICE ANTONIN SCALIA, IN *DERBY V. UNITED STATES*, 131 S. CT. 2858, 180 L. ED. 2D 904 (2011), IN A DISSENT FROM THE DENIAL OF CERTIORARI IN *UNITED STATES V. JARMON*, 596 F.3D 228 (2010), HAS ALREADY CRITICIZED THIS COURT'S REASONING, WRITING THAT IT " ... JUSTIFIED ITS APPARENT VIEW THAT OLIVER TWIST WAS A VIOLENT FELON BY NOTING THAT LARCENY 'REQUIRES THE OFFENDER TO MAKE PURPOSEFUL, AGGRESSIVE MOVES TO PART THE VICTIM FROM HIS OR HER PROPERTY, CREATING A . . . RISK OF VIOLENT CONFRONTATION' SIMILAR TO THE RISK OF VIOLENT CONFRONTATION DURING BURGLARIES."

The Armed Career Criminal Act ("ACCA"), under 18 U.S.C. § 924(e), does not apply to Appellant. To be sentenced under the ACCA, Taste had to be convicted of at least three prior violent felonies, serious drug offenses, or a combination thereof. 18 U.S.C. § 924(e)(1). The Massachusetts' crime of larceny from the person, Mass. Gen. Laws ch. 266, § 25(b) (2008), is not a

"violent felony" that qualifies as an ACCA predicate offense under 18 U.S.C. § 924(e)(2)(B).

The ACCA defines a "violent felony" as "any crime punishable by imprisonment for a term exceeding one year ... that – (I) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another. 18 U.S.C. § 924(e)(2)(B).[1]

Larceny from the person is not an ACCA qualifying offense because the use of physical force is not an element of the underlying state offense. *See* Mass. Gen. Laws ch. 266, § 25(b) (2008). In fact, the fundamental difference between unarmed robbery, and the lesser included offense of larceny from the person, is use or threat of force. *Commonwealth v. Glowacki*, 398

---

[1]. The ACCA defines "violent felony" in a manner substantively identical to the definition of a "crime of violence" in § 4B1.2. Compare 18 U.S.C. § 924(e)(2)(B) (2006) with U.S.S.G. § 4B1.2. This Court, therefore, has held that precedents evaluating the ACCA apply with equal force to U.S.S.G. § 4B1.2. *United States v. Seay*, 553 F.3d 732, 739 (4th Cir. 2009).

15

Mass. 507, 499 N.E.2d 290 (1986). Hence, a pickpocketing, even where the victim is aware of the taking, is a larceny from the person, provided no force is used. *Commonwealth v. Davis*, 7 Mass App 9, 385 N.E.2d 278 (1979).

Nor does larceny from the person fall under ACCA's residual clause, on the ground secret, silent pickpocketing, by their very nature, do not "present[] a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). In fact, pickpocketing is a form of larceny that involves the stealing of money or other valuables from a person without them ever noticing the theft has occurred. The entire crime is premised on a lack of risk of physical injury.

Of course, the First Circuit has ruled, in *United States v. De Jesus*, 984 F.2d 21, 25 (1st Cir. 1993), that the Massachusetts' crime of larceny from the person is a "crime of violence" under the rationale that it "requires theft from either the victim's person or the victim's immediate vicinity," and hence gives rise to "a sufficiently serious potential for confrontation and physical injury invariably exists." *Id*. at 24.

16

The First Circuit reaffirmed this view in *United States v. Rodriguez*, 659 F.3d 117, 119 (1st Cir. 2011), holding that " ... the government contends, and we agree, that under ACCA's so-called residual clause, the [Massachusetts] offense [of larceny from the person]'presents a serious potential risk of physical injury to another' (*citing* 18 U.S.C. § 924(e)(2)(B)(ii))."

Like the First Circuit, this Court has ruled that larceny from the person is a qualifying offense. *United States v. Jarmon*, 596 F.3d 228 (4th Cir. 2010)("Jarmon acknowledges that six years ago, in *United States v. Smith*, 359 F.3d 662 (4th Cir. 2004), we held that larceny from the person constitutes a crime of violence for sentencing purposes because it presents a risk of violent confrontation, and therefore a serious risk of physical injury * * * The relevant question under the 'otherwise' clause in U.S.S.G. § 4B1.2(a)(2), which applies here, is not whether the offense involves as much violence as robbery, but whether it typically involves the type of purposeful, violent, and aggressive conduct that would support an inference that this offender would be more dangerous with a gun. *See Begay*, 128 S. Ct. at 1587. We

17

conclude that larceny from the person typically involves such conduct.").

The district court's reliance on *United States v. Rodriguez*, 659 F.3d 117, 119 (1st Cir. 2011), and this Court's precedent in *United States v. Jarmon*, 596 F.3d 228 (4th Cir. 2010), does not end the issue.

Regardless of this Court's inevitable ruling in this appeal, Appellant must raise this issue now in order to argue file a petition for writ of certiorari.

Justice Antonin Scalia, in a scalding dissent from a denial of certiorari, in *Derby v. United States*, 131 S. Ct. 2858, 2860, 2861,180 L. Ed. 2d 904 (2011), has already expressed his opinion on the issue.

He said:

Before us are petitions for certiorari by criminal defendants asking us to decide whether four more of the "vast variety of . . . criminal offenses" that we have not yet addressed, *see Sykes v. United States*, ante, at 2-4, 7, 131 S. Ct. 2267, 180 L. Ed. 2d 60, 2011 U.S. LEXIS 4377, *56 (Scalia, J., dissenting), are crimes of violence under the residual provision of the Armed Career Criminal Act (ACCA). *See* 18 U.S.C. § 924(e)(2)(B)(ii). They are * * * *Turner v. United States*, No. 10-8885. Relying on its decision

18

in *United States v. Jarmon*, 596 F.3d 228 (2010), the Fourth Circuit held that ACCA's residual provision covers the Virginia offense of larceny from the person, Va. Code Ann. § 18.2-95(I) (Lexis 2009), defined as theft of over $5 in money or goods from another person -- in other words, pickpocketing. In *Jarmon*, the court justified its apparent view that Oliver Twist[2] was a violent felon by noting that larceny "requires the offender to make purposeful, aggressive moves to part the victim from his or her property, creating a . . . risk of violent confrontation" similar to the risk of violent confrontation during burglaries. 596 F.3d at 232. *Derby*, 131 S. Ct. at 2858-59.

Justice Scalia clearly did not agree with this Court's reasoning in *Jarmon*. But he was also critical of the Supreme Court's cases on the ACCA, calling them "incomprehensible to judges." *Id.* at 2860.

As a result, he asked how lower courts would decide which offenses fell under the ACCA, and wondered if they would " ... simply throw the opinions into the air in frustration, and give free

---

[2].  Oliver Twist, subtitled The Parish Boy's Progress, is the second novel by English author Charles Dickens, published by Richard Bentley in 1838. The story is about an orphan, Oliver Twist, who endures a miserable existence in a workhouse and then is placed with an undertaker. He escapes and travels to London where he meets the Artful Dodger, leader of a gang of juvenile pickpockets.

19

rein to their own feelings as to what offenses should be considered crimes of violence ....” Then, tongue in cheek, he noted that

> Before throwing the opinions into the air, however, they should check whether littering -- or littering in a purposeful, violent, and aggressive fashion -- is a felony in their jurisdiction. If so, it may be a violent felony under ACCA; or perhaps not. *Id*. at 2859-60.

Other Circuit Courts have weighed in on whether the Supreme Court will grant certiorari based on the facts in this case. *United States v. Prater*, 766 F.3d 501, 518 (6th Cir. 2014)(“Here, the discussion above suffices to indicate that there is considerable confusion and disagreement—let alone ‘reasonable dispute’—about which state offenses qualify as predicates under the ACCA and the Guidelines Manual, especially under the residual clauses. Since the Supreme Court decided Sykes in 2011 (and *Chambers* in 2009, *Bega*y in 2008, and *James* in 2007), it has continued to receive multiple certiorari petitions asking it to determine which state-law offenses qualify as violent felonies and crimes of violence under the residual clauses”); *States v. Tucker*, 740 F.3d 1177, 1186-87 (8th Cir. 2014)(Loken, J.,

20

concurring)("Justice Scalia might persuade a majority of his colleagues that the residual clause is unconstitutionally vague. *See Derby v. United States*, 131 S. Ct. 2858, 2860, 180 L. Ed. 2d 904 (Scalia, J., dissenting from the denial of four certiorari petitions).[3] Justice Thomas might at long last persuade a majority that the protections of *Apprendi.* Or the Court's frustration with the 'nearly impossible' task of applying the categorical approach to the residual clause, combined with continuing congressional inaction, might prompt the Court to adopt a completely new approach" (internal citations omitted).

In short, Appellant must exhaust this claim in this Court before seeking a petition for writ of certiorari on this issue in the

---

[3]. This and other circuit courts have held the residual clause is not unconstitutionally vague. *United States v. Hudson*, 673 F.3d 263, 268-69 (4th Cir. 2012); *United States v. Jones*, 689 F.3d 696, 704 (7th Cir. 2012); *United States v. Cowan*, 696 F.3d 706, 708 (8th Cir. 2012). So has the Supreme Court. *Sykes v. United States*, 131 S. Ct. 2267, 2287-88, 180 L. Ed. 2d 60 (2011) (concluding "the residual clause . . . provides guidance that allows a person to conform his or her conduct with the law"); *United States v. James*, 550 U.S. 192, 210 n.6, 127 S. Ct. 1586, 167 L. Ed. 2d 532 (2007)("[W]e are not persuaded by Justice Scalia's suggestion . . . that the residual provision is unconstitutionally vague."). Yet the issue here is the application, rather than the constitutionality, of the ACCA.

Supreme Court, because, as Justice Scalia correctly recognized, a pickpocket simply does not qualify as a prior violent felony under the ACCA.


## CONCLUSION

APPELLANT'S SENTENCE SHOULD BE REVERSED.


Dated: November 7, 2014
　　　　Uniondale, New York




　　　　　　　　　　　　　　　*/s/ Steven A. Feldman*
　　　　　　　　　　　　　　　Steven A. Feldman
　　　　　　　　　　　　　　　Feldman & Feldman

22

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

       *Plaintiff-Appellee,*

  *v.*

ANTONIO TASTE,

       *Defendant-Appellant.*

<u>REQUEST FOR ORAL ARGUMENT</u>

Appellant will either orally argue or waive oral argument

at the pleasure of the Court.


          <u>*/s/ Steven A. Feldman*</u>
          Steven A. Feldman

23

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

> *Plaintiff-Appellee,*

> *v.*

ANTONIO TASTE,

> *Defendant-Appellant.*

CERTIFICATE OF COMPLIANCE WITH TYPEFACE AND
LENGTH LIMITS PURSUANT TO FRAP 32(A)(7)(c)

I, Steven A. Feldman, hereby certify that, pursuant to Rule 32 of the Federal Rules of Appellate Procedure, this brief does not exceed 30 pages, 1,300 lines or 14,000 words. Instead, it contains 25 pages, 474 lines and 3,699 words.

*/s/ Steven A. Feldman*
Steven A. Feldman

24

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee,*

    *v.*

ANTONIO TASTE,

        *Defendant-Appellant.*

In accordance with Rule 25 of the Rules of the United States Court of Appeals for the Fourth Circuit, I hereby certify that I have this November 7, 2014, filed the required copies of the foregoing Brief of Appellant in the Office of the Clerk of the Court, via hand delivery and have electronically filed the Brief of Appellant using the Court's CM/ECF system which will send notification of such filing to the following counsel:

Michael Francis Joseph, Assistant U. S. Attorney
OFFICE OF THE UNITED STATES ATTORNEY
4th Floor
101 South Edgeworth Street
Greensboro, NC 27401

        */s/ Steven A. Feldman*
        Steven A. Feldman